## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

CCAPS, LLC                                      CIVIL ACTION

VERSUS                                          NO. 21-2195

HD AND ASSOCIATES, LLC                          SECTION: D (4)

## ORDER AND REASONS

Before the Court is a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) filed by the Defendant HD and Associates, LLC.[1]  Plaintiff CCAPS, LLC, doing business as ServiceMaster Elite ("Plaintiff" or "CCAPS"), has filed a response in opposition to Defendant's Motion.[2]  The Motion is fully briefed.  Plaintiff has also filed an Unopposed Motion to Withdraw Certain Claims Asserted by CCAPS, LLC d/b/a ServiceMaster Elite.[3] After careful consideration of the parties' memoranda, the Complaint filed by Plaintiff, the record, and the applicable law, the Court **GRANTS in part** and **DENIES in part** the Motion to Dismiss and **DISMISSES with prejudice** the breach of contract, enforcement of lien, breach of the covenant of good faith and fair dealing, and open account claims asserted by Plaintiff against Defendant.  The Court **GRANTS** Plaintiff's Motion to Withdraw the defamation claim and **DISMISSES** that claim **with prejudice**.

## I.    FACTUAL & PROCEDURAL BACKGROUND

This case stems from the havoc wreaked by Hurricane Ida in the Greater New

---

[1] R. Doc. 38.
[2] R. Doc. 42.
[3] R. Doc. 130.  Although styled as a "Motion to Withdraw," the Court treats the Motion as a motion for voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(2).

Orleans area on August 29, 2021.  Plaintiff brings a multitude of claims against Defendant, including claims for breach of contract, enforcement of a lien against Defendant's property pursuant to the Louisiana Private Works Act, open account under La. R.S. 9:2781, quantum meruit, unjust enrichment, and defamation.[4]

According to the Complaint, Defendant owns and manages two multi-tenant office buildings located at 777 and 781 Behrman Highway in Gretna, Louisiana.[5] Hurricane Ida caused extensive water intrusion and damage to Defendant's properties.[6]  According to Defendant, Plaintiff approached Defendant shortly after the storm to provide disaster mitigation and remediation services.[7]  Plaintiff is in the business of providing "commercial and residential disaster mitigation services following natural disasters to reduce and prevent additional damage to the building, its interior, and/or its contents."[8]  At the time of the events in this lawsuit, Plaintiff maintained its principal place of business outside of Louisiana and did not possess a Louisiana contractor's license.[9]

Plaintiff and Defendant entered into an "Authorization for Work and Payment" (the "Agreement")—the contract at issue in this litigation—on September 13, 2021.[10] The Agreement was signed by John Davillier ("Davillier"), on behalf of Defendant, and Gary Partsch ("Partsch"), sales manager for Plaintiff.[11]   Per the terms of the

---

[4] R. Doc. 34.
[5] *Id.* at ¶ 8.
[6] *Id.*; R. Doc. 38-1 at p. 2.
[7] R. Doc. 38-1 at pp. 2–3.
[8] R. Doc. 34 at ¶ 9.
[9] *Id.* at ¶¶ 1, 75.
[10] *Id.* at ¶ 10.
[11] *Id.* at ¶ 10; *see also* R. Doc. 1-2.  Although Plaintiff did not attach the contractual Agreement to their Amended Complaint, the Court finds it appropriate to consider the Agreement attached to Plaintiff's

Agreement, Plaintiff agreed to "perform emergency cleaning and/or mitigation services . . . intended to reduce and prevent additional damage to the building and/or contents."[12]   Elsewhere in the Agreement the work to be performed by Plaintiff is described as "restoration" work.[13]   However, the Agreement also explicitly states that Plaintiff "will not perform construction/restoration work on the structures" and that if Defendant were to need such services, Defendant "must separately hire a construction company."[14]   According to Plaintiff, Plaintiff's work included the removal of ceiling tiles, flooring, carpet, baseboards, cabinets, and walls, the cleaning and sanitizing of the floors and studs, and the installation of drying equipment and air scrubbers.[15]

Plaintiff commenced work on September 15, 2021.[16]   After each day of work, Plaintiff's Project Manager, Joe Scroggins ("Scroggins"), sent a daily report to Defendant detailing the work completed that day, "daily work schedules, project tasks, moisture maps, and a VISUAL scope of the work diagram."[17]   On October 7, 2021, after several weeks of work, Plaintiff certified that all work had been completed.[18]   However, several days later, on October 11, 2021, Plaintiff informed

---

original Complaint without converting the present Motion into a motion for summary judgment because the Agreement is referenced in the Amended Complaint and is central to Plaintiff's claims. *See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodaux, Inc.*, No. CIV.A. 10-4443, 2013 WL 1513406, at *3 (E.D. La. Apr. 11, 2013) (Feldman, J.) ("In deciding a motion to dismiss, the Court may consider documents that are essentially 'part of the pleadings.' That is, any documents attached to or incorporated in the plaintiff's complaint that are central to the plaintiff's claim for relief." (citing *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004))).

[12] R. Doc. 1-2.
[13] *Id.*
[14] *Id.*
[15] R. Doc. 34 at ¶ 13.
[16] *Id.* at ¶ 14.
[17] *Id.* at ¶ 15.
[18] *Id.* at ¶ 17.

Defendant of the need to remediate an additional four offices at a higher cost than originally budgeted.[19]  Scroggins submitted the final scope of work and invoice on October 12, 2021 to Lance Thompson ("Thompson"), "an employee of John Houghtaling and the agent for HD&A."[20]

Defendant has not paid Plaintiff for the work performed pursuant to the Agreement.[21]  As a result of this dispute, Defendant filed a petition for declaratory judgment in the 24th Judicial District Court, Parish of Jefferson, State of Louisiana on October 26, 2021, seeking a judicial declaration that the Agreement entered into between the parties is an absolutely null contract because Plaintiff lacked a contractor's license and that Plaintiff committed fraud.[22]  Plaintiff removed that action to this Court on November 29, 2021, the same day that it filed a Complaint in the instant case.[23]  Defendant subsequently filed a Motion to Dismiss the claims in Plaintiff's Complaint.[24]  Plaintiff then moved to amend its Complaint,[25] which the Magistrate Judge granted,[26] and moved to consolidate this action with the removed declaratory action filed by the Defendant.[27]  This Court granted the motion to consolidate the two cases and denied without prejudice Defendant's first motion to dismiss as moot.[28]

---

[19] *Id.* at ¶ 18.
[20] *Id.* at ¶¶ 11, 20.  In its Complaint, Plaintiff also asserted a claim for defamation.  On February 9, 2023, Plaintiff filed a Motion to withdraw those claims.  *See* R. Doc. 130.  Therefore, the Court will not summarize the factual background as it relates to the withdrawn defamation claim.
[21] R. Doc. 34 at ¶ 29.
[22] *See HD & Assocs., LLC v. CCAPS, LLC*, No. 21-cv-2196, R. Doc. 1-1 (E.D. La. Nov. 29, 2021).
[23] *Id.*
[24] R. Doc. 8.
[25] R. Doc. 22.
[26] R. Doc. 33.
[27] R. Doc. 17.
[28] R. Doc. 37.

Defendant filed the present Motion to Dismiss on April 5, 2022, seeking dismissal of Plaintiff's claims for breach of contract, enforcement of lien under the Louisiana Private Works Act, open account under La. R.S. 9:2781, quantum meruit, unjust enrichment, and defamation.[29]   Defendant argues that Plaintiff's breach of contract and lien claim fail because the Agreement between the parties was an "absolute nullity" void from the outset due to Plaintiff's lack of a Louisiana contractor's license.[30]   Defendant contends that the types of services contemplated under the Agreement and performed by Plaintiff classify Plaintiff as a "contractor" under Louisiana law.[31]   Accordingly, Defendants argue, Plaintiff was required to possess a contractor's license issued by the Louisiana State Licensing Board for Contractors.[32]   Without such a license, any contract entered into by Plaintiff is unenforceable as a matter of law.   Regarding the open account claim under La. R.S. 9:2781, Defendant argues that no such account exists because Plaintiff "has alleged to this Court that the price and scope for the alleged contract is a known amount, not undetermined, for the one-time services provided to [Defendant]."[33]   Because there is no open account, Defendant contends, the claim must be dismissed.

As for the claims of unjust enrichment and quantum meruit, Defendant argues that Plaintiff should not be allowed to recover because Plaintiff either knew or should

---

[29] R. Doc. 38.
[30] *See* R. Doc. 38-1 at pp. 1–2, 11–12.
[31] *Id.* at pp. 8–9.
[32] *Id.* at pp. 10–11.
[33] *Id.* at p. 13.

have known of the reasons regarding the illegality and unenforceability of the Agreement.[34]

Plaintiff filed a response in opposition to the Motion, arguing that Plaintiff's Amended Complaint sufficiently states plausible claims for relief by giving the "'who, what, when, where, and how' of the misconduct charged and put[ting] [Defendant] on notice of the representations at issue in this case."[35]   Plaintiff contends that Defendant's argument that Plaintiff "'cannot make any plausible allegations of the existence of a valid contract necessary to state a valid claim,' should also be rejected as it does not comply with the defenses for relief enumerated in Fed. R. Civ. P. 12(b)(6)."[36]   Plaintiff also argues that the Court should not consider matters outside of the pleading and should not convert the instant Motion into a motion for summary judgment.[37]

Specifically, as for the breach of contract claim, Plaintiff argues that it has adequately stated the elements of a valid contract under Louisiana law and that it did not require a license to perform the services under the Agreement.[38]   Plaintiff further argues that despite being a foreign limited liability company, it is not

---

[34] *Id.* at pp. 13–14.  In light of Plaintiff's Motion withdrawing its claims of defamation, R. Doc. 130, the Court will not summarize any arguments made by Defendant regarding that claim.

[35] R. Doc. 42 at p. 6.

[36] *Id.* at p. 7.  The Court notes that there is precisely one defense stated in Fed. R. Civ. P. 12(b)(6): "failure to state a claim upon which relief can be granted."

[37] *Id.* at pp. 2–4.  Plaintiff suggests that Defendant has asked for "the Court to convert its Rule 12(b)(6) motion to dismiss to a motion for summary judgment." *Id.* at p. 2.  The portion of Defendant's Motion cited by Plaintiff in support for this proposition does not support Plaintiff's suggestion.  *Id.* (citing *Servicios*, 2013 WL 1513406, at *3).  Rather *Servicios* stands for the straightforward proposition that a court may consider certain matters outside the pleadings without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment.  *See Servicios*, 2013 WL 1513406, at *3.

[38] R. Doc. 42 at pp. 7–9.

precluded from filing the instant suit in federal court.[39]  Although Plaintiff contends that Defendant's Motion should be "rejected entirely . . . as the arguments raised by Defendant are without merit and lack jurisprudential and factual support[,]"[40] Plaintiff does not otherwise address any of Defendant's arguments pertaining to Plaintiff's claim under the PWA, open account claim, claims for quantum meruit and unjust enrichment, and defamation claim.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[41]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[42]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[43]  But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[44]

In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the non-moving party.[45]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted

---

[39] *Id.* at pp. 12–14.
[40] *Id.* at p. 14.
[41] Fed. R. Civ. P. 12(b)(6).
[42] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[43] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678) (quotation marks omitted).
[44] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).
[45] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

factual inferences, or legal conclusions.[46]   "Dismissal is appropriate when the complaint on its face shows a bar to relief."[47]   In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[48]   The Court can also consider matters of public record and matters subject to judicial notice.[49]

### III.   ANALYSIS

### A.   Matters Considered

As noted earlier, Plaintiff did not attach the Agreement in question to its Supplemental and Amended Complaint.[50]   While a court is generally prohibited from considering information outside the pleadings, the Court finds it appropriate to consider the Agreement in its analysis because the Agreement is referenced in the Complaint and is central to Plaintiff's claims.[51]

---

[46] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

[47] *Cutrer v. McMillan*, 308 Fed. Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

[48] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).

[49] *Servicios*, 2013 WL 1513406, at *3.

[50] *See, supra*, n.11; R. Doc. 34.

[51] *See Servicios*, 2013 WL 1513406, at *3 ("In deciding a motion to dismiss, the Court may consider documents that are essentially 'part of the pleadings.' That is, any documents attached to or incorporated in the plaintiff's complaint that are central to the plaintiff's claim for relief." (citing *Causey*, 394 F.3d at 288)).   The Agreement can be found at R. Doc. 1-2, "Disaster Mitigation and Restoration Services Authorization for Work and Payment."

### B.     Breach of Contract

To assert a claim for breach of contract under Louisiana law,[52] a plaintiff must allege "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the oblige."[53]  Put differently, the elements of a breach of contract are the existence of an agreement, a breach of that agreement, and damages resulting from that breach.  Here, the parties dispute whether or not a valid agreement between the parties under Louisiana law existed in the first place.

Under Louisiana law, it is unlawful for a person to either engage in the business of contracting or to act as a contractor without holding an active contractor's license.[54]  "[O]nly a person who has obtained a contractor's license from the State Licensing Board for Contractors may be engaged in the contracting vocation in the State of Louisiana."[55]  A "contractor" is defined as:

> [A]ny person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment, or installing material or equipment for any . . . building,

---

[52] Provisions in construction contracts where one of the parties is domiciled in Louisiana which require "interpretation of the agreement according to the laws of another jurisdiction" are "null and void" and "unenforceable as against public policy."  La. R.S. 9:2779.  Thus, the provision in the Agreement here which specifies that the Agreement shall be "interpreted in accordance with Maine law" is void.  Moreover, neither party disputes that Louisiana law applies here.

[53] *Favrot v. Favrot*, 2010-0986 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1109, *writ denied*, 2011-0636 (La. 5/6/11), 62 So. 3d 127 (citing *1436 Jackson Joint Venture v. World Constr. Co., Inc.*, 499 So.2d 426, 427 (La. App. 4 Cir. 1986)).

[54] *See* La. R.S. 37:2163(A)(1) ("It shall be unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor in accordance with the provisions of this Chapter.").

[55] *Hagberg v. John Bailey Contractor*, 435 So. 2d 580, 584 (La. App. 3 Cir. 6/29/83), *writ denied*, 444 So.2d 1245.

> highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the entire cost is fifty thousand dollars or more when the property is to be used for commercial purposes.[56]

Thus, whether a contractor's license is needed to perform a specific service depends in part on the nature of the services to be rendered. Importantly, any contract made with an unlicensed contractor is an absolute nullity which "is deemed never to have existed."[57]  Moreover, "[a] contract that is absolutely null may not be confirmed."[58]   These provisions were specifically enacted so that unqualified individuals operating in professional fields could not injure or mislead the State's citizens.[59]

The central issue is whether the services performed by Plaintiff at Defendant's properties rendered Plaintiff a "contractor" under Louisiana law such that a contractor's license was required to perform the work.  It is undisputed that Plaintiff did not possess a Louisiana contractor license when it performed the work at Defendant's properties.[60]  Accordingly, if Plaintiff falls under the statutory definition of "contractor," then the Agreement entered into between the parties is an "absolute

---

[56] La. R.S. 37:2150.1(4)(a).

[57] La. C.C. art. 2033; *Quaternary Res. Investigations, LLC v. Phillips*, 2018-1543, 316 So. 3d 448, 459 (La. App. 1 Cir. 11/19/20) ("Any contract made in violation of the Contractors Licensing Law is null and void." (citing *Tradewinds Env't Restoration, Inc. v. St. Tammany Park, L.L.C.*, No. CIV A 06-593, 2007 WL 1191896, at *3 (E.D. La. Apr. 20, 2007) (Barbier, J.), *aff'd sub nom. Tradewinds Env't Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255 (5th Cir. 2009))), *writ denied*, 2020-01450 (La. 3/2/21), 311 So. 3d 1059.

[58] La. C.C. art. 2030.

[59] *See Sewell v. St. Bernard Parish Gov't*, No. CV 21-2376, 2023 WL 1765923, at *7 (E.D. La. Feb. 3, 2023) (Vitter, J.); *Tradewinds*, 2007 WL 1191896, at *3.

[60] R. Doc. 34 at ¶ 75.

nullity" and Plaintiff's claims to enforce that Agreement must fail as a matter of law. If, however, the services performed by Plaintiff did *not* require a contractor's license, then Defendant's motion to dismiss must be denied because Plaintiff's complaint would sufficiently state a claim for breach of contract.

The Agreement entered into by the parties specifies that Plaintiff would perform "emergency cleaning and/or mitigation services" at Defendant's properties but would not perform "construction/restoration work on the structures."[61]   The Agreement does not further define the nature or scope of the cleaning or mitigation services performed by Plaintiff.  According to the Complaint, Plaintiff's remediation services were "limited to removing ceiling tiles, flooring, carpet, baseboards, cabinets, and walls, cleaning and sanitizing the floors and studs, and installing drying equipment and air scrubbers."[62]

While not a model of clarity, in one portion of its brief in opposition, Plaintiff appears to "double-down" on the allegations in its Complaint while also distancing itself from its Complaint in a separate portion of the brief.  Plaintiff contends that its "work included the removal of the building's component parts, including its walls, flooring, carpet, baseboards, ceiling tiles, and cabinets, the cleaning and sanitizing of the flooring and studs, and the installation of drying equipment and air scrubbers."[63] Plaintiff then argues that it was not required to be a licensed contractor to perform water removal/extraction/mitigation or dewatering services.   Nowhere in the

---

[61] R. Doc. 1-2.

[62] R. Doc. 34 at ¶ 13.

[63] R. Doc. 42 at p. 6 n.2.

Agreement are the words "dewatering" or "water extraction" to be found.[64]  More to the point, Plaintiff's argument that it was not required to be a licensed contractor to perform water removal/extraction/mitigation or dewatering services completely ignores the other services it contends it actually performed.  Accordingly, the issue at bar is whether these services allegedly performed by Plaintiff make Plaintiff fall under the statutory definition of "contractor."

### i.  Plaintiff falls under the definition of "contractor"

The question before the Court is a legal one—whether Plaintiff falls under the statutory definition of "contractor" in this matter.  As always, the Court begins with the language of the statute.[65]  "The task of statutory interpretation begins and, if possible, ends with the language of the statute."[66]  Louisiana law requires a contractor's license for the "construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment, or installing material or equipment for . . . [a]ny building . . . or any other construction undertaking for which the entire cost is fifty thousand dollars or more when the property is to be used for commercial purposes."[67]  It is undisputed that Defendant's properties are a "building," that the cost of the services performed by Plaintiff were greater than fifty thousand dollars, and that Defendant's property is "used for commercial purposes."[68]  Thus, the sole concern of the Court is

---

[64] R. Doc. 1-2.
[65] *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980) ("We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself.").
[66] *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013).
[67] La. R.S. 37:2150.1(4)(a).
[68] *See* R. Doc. 34 at ¶¶ 8, 12.

whether the services performed by Plaintiff constitute "construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment, or installing material or equipment."[69]

The Court construes the statute by giving the chosen terms their plain and ordinary meaning.  "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."[70]  "Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense."  The Court will not construe a statute in a manner that is strained or that would render a statutory term superfluous.[71] "[A] statute must, if possible, be construed in such fashion that every word has some operative effect."[72]

Relying on the facts as stated in the Complaint, Defendant argues that Plaintiff meets the definition of "contractor" because Plaintiff, "completed the (1) demolition/removal/teardown of the commercial building's walls, floors, carpet, baseboards, ceiling tiles, and cabinets; [and] (2) furnishing of labor to clean and

---

[69] La. R.S. 37:2150.1(4)(a).

[70] La. C.C. art. 9; *accord United States v. Lauderdale Cnty.*, 914 F.3d 960, 964 (5th Cir. 2019) ("When the language is plain, we 'must enforce the statute's plain meaning, unless absurd.'" (quoting *Trout Point Lodge*, 729 F.3d at 486)).

[71] *See Norton v. United States*, No. CV 21-0724, 2022 WL 741851, at *4 (D.D.C. Mar. 11, 2022) (Kollar-Kotelly, J.) ("A court may not presume that [the legislature] intended for whole words and phrases of a statute to be effectively meaningless or mere surplusage." (citing *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 258 (1993) and *Dole Food Co. v. Patrickson*, 538 U.S. 468, 476–77 (2003)).

[72] *United States v. Nordic Village, Inc.*, 503 U.S. 30, 36 (1992).

sanitize with the installation of drying equipment and air scrubbers."[73]  Indeed, in its opposition brief, Plaintiff reaffirms its actions taken, adding, "[Plaintiff]'s work included the removal of the building's component parts, including its walls, flooring, carpet, baseboards, ceiling tiles, and cabinets[.]"[74]  Defendant contends that Plaintiff contracted to perform three different activities which suffice to classify Plaintiff as a contractor: "demolition," "tearing down," and "furnishing labor together with material or equipment."[75]  Plaintiff, conversely, relies upon the language in the Agreement stating that Plaintiff will not perform construction or restoration work on Defendant's properties to argue that it did not act as a contractor.[76]  Plaintiff does not otherwise address the language of the statute or the facts set forth in the Complaint relied on by Defendant.

Because La. R.S. 37:2150.1(4)(a) does not define any of the statutory terms, the Court looks first to the ordinary meaning of the words.[77]  Because the list of services covered by § 2150.1(4)(a) is disjunctive, if the Court finds that the work performed under the Agreement falls under any one of the terms in the statute then Plaintiff necessarily meets the definition of "contractor."  As for the first term, "construction," the Court notes that the Agreement explicitly disclaims that any construction or restoration work was to be performed by Plaintiff.[78]  Plaintiff further denies doing any construction work on Defendant's property.  The Court agrees with Plaintiff that

---

[73] R. Doc. 38-1 at pp. 8–9.
[74] R. Doc. 42 at p. 6 n.2.
[75] R. Doc. 38-1 at pp. 8–9.
[76] *See* R. Doc. 42 at p. 9.
[77] *See Lauderdale Cnty.*, 914 F.3d at 964 (quoting *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011)).
[78] *See* R. Doc. 1-2.

Plaintiff did not contract to perform construction.  That Plaintiff did not contract to perform construction/restoration work does not end the inquiry.

Plaintiff goes too far in suggesting that because Plaintiff did not agree to perform construction work Plaintiff, therefore, was not a "contractor."[79]  Simply put, that Plaintiff did not perform *construction* work does not take Plaintiff outside the ambit of the statute.  Plaintiff's interpretation would have this Court excise whole words and phrases from § 2150.1(4)(1), as though they were mere surplusage.[80]  The Court will not ignore the clear language of the statute which explicitly lists several other types of work besides construction.  The statute requires a contractor's license for more than just construction; the statute includes other terms, specifically "alteration" and "tearing down," which the Court finds to encompass the type of services contemplated by the Agreement and performed by the Plaintiff here.

"Alteration" is "the act or process of altering something"[81] with "altering" being the present participle of "alter" which is further defined as "to make different without

---

[79] *See* R. Doc. 42 at p. 9.

[80] *See Dole Food Co.*, 538 U.S. at 476–77 ("[W]e should not construe the statute in a manner that . . . would render a statutory term superfluous.").

[81] *Alteration, Merriam-Webster*, https://www.merriam-webster.com/dictionary/alteration (last accessed Feb. 7, 2023); *see also Alteration, Merriam-Webster's Ninth New Collegiate Dictionary* (9th ed. 1991). The Court relies on the definition provided in the Ninth Edition of Merriam-Webster's Collegiate Dictionary—which is nearly identical to that provided in the Merriam-Webster online version—for two principal reasons.  First, the Ninth Edition is contemporaneous to the drafting of La. R.S. 37:2150.1. *See* 1992 La. Sess. Law Serv. Act 681; *cf. Utah v. Evans*, 536 U.S. 452, 492 (2002) (Thomas, J., concurring in part) ("Dictionary definitions contemporaneous with the ratification of the Constitution inform our understanding.").  Subsequent amendments to the statute have not affected the relevant portion construed herein.  Second, the Fifth Circuit has cautioned against relying solely on a single dictionary alone and has championed Merriam-Webster's Collegiate as "one of 'the most useful and authoritative for the [modern] English language generally and for law." *Capio Funding, L.L.C. v. Rural/Metro Operating Co., L.L.C.*, 35 F.4th 353, 357 n.9 (5th Cir. 2022) (quoting Antonin Scalia & Brian Garner, *Reading Law: The Interpretation of Legal Texts* 419–23 (2012)).

changing into something else."[82]  Put together, "alteration" is "the act or process of . . . mak[ing] [something] different without changing [it] into something else."[83]  In this sense, an alteration is a change that does not affect the overall original identity or nature of the altered object.  Here, the water remediation services performed by Plaintiff involving, *inter alia*, the removal of ceiling tiles, flooring, carpeting, baseboards, cabinets, and walls constitute an "alteration" of Defendant's property because the buildings were "ma[d]e different without changing into something else."[84]  Prior to Plaintiff's services, the buildings were hurricane- and water-damaged commercial office buildings.[85]  After Plaintiff's performance, the buildings remained commercial office buildings, less water-damaged carpets, flooring, walls, baseboards, etc.  The changes made to Defendant's properties modified the properties without transforming the properties into something new in kind.  The Court finds this to constitute an "alteration" under the plain meaning as that term is used in La. R.S. 37:2150.1(4)(a).

Further, the Court finds that Plaintiff performed "tearing down" at Defendant's properties.  Per the Complaint, Plaintiff removed ceiling tiles, flooring, carpet, baseboards, cabinets, and walls.[86]  To "tear down" is "to cause to decompose or disintegrate" or "to take apart."[87]  In common parlance, one might refer to the

---

[82] *Alter*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/alter (last accessed Feb. 7, 2023); *see also Alter*, *Merriam-Webster's Ninth New Collegiate Dictionary* (9th ed. 1991).

[83] *See id.*; n. 80, *supra*.

[84] *See*, *supra*, n. 84.

[85] *See* R. Doc. 34 at ¶ 8.

[86] *Id.* at ¶ 13.

[87] *Tear down*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/tear down (last accessed Feb. 7, 2023); *see also Tear down*, *Merriam-Webster's Ninth New Collegiate Dictionary* (9th ed. 1991).

removal of a wall, for instance, as the "tearing down" of the wall.  Although "tearing down" could be construed as referring to the destruction of an entire structure rather than simply a part or element of a larger structure, such a construction would render the term "demolition" superfluous.[88]  And without clear language indicating that such was the intention of the Louisiana legislature, the Court refuses to adopt such construction.[89]  Instead, "tearing down" suggests the removal or elimination of certain aspects of a structure, as was the case here.  Because Plaintiff's remediation work involved "taking apart"[90] certain water-damaged components of Defendant's properties, the Court finds that the services performed by Plaintiff also fit the "tearing down" language of § 2150.1(4)(a).

The Court need not belabor the point by discussing whether the work performed by Plaintiff falls under any other term of the definition of "contractor," such as "repair," "demolition," or the "furnishing of labor together with material or equipment" as Defendant suggests,[91] as the Court finds it sufficient that Plaintiff contracted to perform "alteration" and the "tearing down" of structures at Defendant's properties.  Instead, the Court finds it appropriate to address Plaintiff's principal counterargument that so-called dewatering or water remediation services do not

---

[88] Demolition is "the act of demolishing." *Demolition*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/demolition (last accessed Feb. 7, 2023); *see also Demolition*, *Merriam-Webster's Ninth New Collegiate Dictionary* (9th ed. 1991). Demolish is defined as "tear down, raze . . . to break to pieces . . . [and] to do away with." *Demolish*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/demolishing (last accessed Feb. 7, 2023); *see also Demolish*, *Merriam-Webster's Ninth New Collegiate Dictionary* (9th ed. 1991).
[89] *See Dole Food Co.*, 538 U.S. at 476–77 ("[W]e should not construe the statute in a manner that . . . would render a statutory term superfluous.").
[90] *See*, *supra*, n.87.
[91] *See* R. Doc. 38-1 at pp. 8–9.

require a license to perform.[92]  Plaintiff does not clarify whether its position is that such services fall outside the definition of the types of work that renders one a "contractor" or that such services do meet the definition of "contractor" but are nevertheless exempted from the licensure requirements.

### ii.   The LSLBC's interpretation of "contractor" does not help Plaintiff

Plaintiff argues that the "Louisiana State Licensing Board for Contractors does not a require a Louisiana Commercial Contractor's License, Residential Contractor's License, or Home Improvement License for 'dewatering' services in Louisiana."[93] Plaintiff's sole authority for this proposition comes from the "Frequently Asked Questions" section of the LSLBC's webpage which states that "[w]ater extraction, carpet removal, [and] damaged drywall removal do NOT require a license from LSLBC."[94]  The website does not cite any statutory or regulatory support for this proposition.   The LSLBC's own purported interpretation, through a "Frequently Asked Questions" portion of a website, of what kinds of services require a contractor's license under Louisiana law is in no way binding upon this Court.[95]  Rather, the

---

[92] Somewhat perplexingly, Plaintiff argues in its opposition brief that Defendant re-urges the Court to consider a case from the Western District of Louisiana "as though, somehow, the facts changed since it cited the case as a supplemental authority for its first Motion to Dismiss." *See* R. Doc. 42 at p. 10. The Court reminds counsel that the Court dismissed the first Motion to Dismiss as moot because Plaintiff had subsequently filed an Amended Complaint. *See* R. Doc. 37. To argue otherwise is misleading.

[93] R. Doc. 42 at p. 12.

[94] "Does dewatering require a license from LSLBC?", *Louisiana State Licensing Board for Contractors*, https://lslbc.louisiana.gov/faq/does-dewatering-require-a-license-from-lslbc/ (Aug. 18, 2016).   The Court takes judicial notice of the public information contained on this Louisiana state government website without converting this motion to dismiss into a motion for summary judgment. *See Cicalese v. Univ. of Texas Med. Branch*, 456 F. Supp. 3d 859, 871–72 (S.D. Tex. 2020) (collecting cases).

[95] This Court recently confronted what weight, if any, should be given to various informal "bulletins" published by the LSLBC.  *See Sewell*, 2023 WL 1765923, at *9–10.  Finding no legal authority

Court's obligation is to enforce the law as actually written and adopted by the people of Louisiana through their legislature.[96]  Although the LSLBC is authorized to "make . . . by-laws, rules, and regulations . . . in accordance with [Louisiana's] Administrative Procedure Act[,]"[97] there is no indication that any such formalities occurred here or that the "Frequently Asked Questions" section of their website represents an authoritative announcement of the LSLBC.[98]

Further, although "an administrative agency such as the [LSLBC] has 'broad discretion in deciding to what extent to undertake enforcement[,]'" such discretion "does not give it authority to suspend the licensing requirements" altogether.[99] Accordingly, the Court finds Plaintiff's reliance on the statement from the "Frequently Asked Questions" portion of the LSLBC's website to be misplaced and without merit.

---

suggesting that such bulletins constitute binding law or legal authority, this Court disregarded the bulletins in their entirety. *Id.*

[96] *Cf. Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."); *see also id.* at 843 n.9 ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").

[97] La. R.S. 37:2153(A).

[98] Indeed, the LSLBC has promulgated numerous rules and regulations in accordance with the procedures set forth in La. R.S. 49:961, none dealing with the regulation of dewatering or water mitigation services performed in the state.  *See* La. Admin. Code tit. 46 § XXIX.

[99] *Tradewinds*, 578 F.3d at 260; *accord Trade-Winds Env't Restoration, Inc. v. Stewart*, No. CIV. A. 06-3299, 2008 WL 236891 (E.D. La. Jan. 28, 2008) (Lemelle, J.) ("[T]he Board's policy of lax enforcement, while likely a valid exercise of administrative power, did not change the fact that the statutes in place still represented the legal requirements for contractors in order to enter into valid contracts."), *aff'd sub nom. Trade-Winds Env't Restoration, Inc. v. Stewart Dev. Liab. Co.*, 409 Fed. Appx. 805 (5th Cir. 2011).

### iii.    Recent statutory amendments support the Court's construction

The Court finds that recent amendments to Louisiana law governing contractors in the state further compel the Court's conclusion that at the time the Agreement was entered into in September 2021, the types of services performed by Plaintiff fell within the definition of "contractor" such that a license was required to perform such services.  On August 1, 2022, La. R.S. 37:2157 was amended to explicitly exempt "dewatering or water mitigation" from the provisions of Part I of Chapter 24 governing the law of contractors in Louisiana.[100]  The definition of "contractor" in § 2150.1(4)(a) is one of the provisions contained in Part I of Chapter 24.  Thus, it appears that prior to August 1, 2022, "dewatering or water mitigation" services were *not* statutorily exempted from, *inter alia*, the definition of "contractor" under § 2150.1(4)(a).  While it is true that the amendment exempts "dewatering or water remediation" from more than just the definition of "contractor" under § 2150.1(4)(a), the Court finds that the effect of the amendment is to remove the prohibition against contracting without a license under La. R.S. 37:2163, 2164 for "dewatering or water remediation" services; the other provisions of Part I are largely inapplicable.

The Court finds this amendment to be further support that "dewatering" services and the types of services performed here by Plaintiff were, at the time of Agreement, covered under the definition of "contractor" and, thus, needed a license to perform.  To hold otherwise would be to construe the amendment as an entirely superfluous and perfunctory exercise with no real effect.  If, as Plaintiff suggests,

---

[100] *See* 2022 La. Sess. Law Serv. Act 195.

dewatering and water mitigation services already did not fall under the definition of contractor, then the amendment would be mostly meaningless as dewatering and water mitigation already would have been exempted from the licensing requirements; a license is only required if one meets the definition of "contractor."  The Court will not construe an amendment to statutory text as having no operative effect or as being entirely superfluous.

### iv.   Other caselaw does not affect this Court's holding

Both the Plaintiff and the Defendant cite to *RACM LLC v. Glad Tidings Assembly of God Church of Lake Charles* in support of their respective arguments.[101] Before addressing that case in any detail, the Court notes that it does not hold any precedential value for this Court.  In *RACM LLC*, the court initially granted the defendant's motion to dismiss the plaintiff's breach of contract claim, finding that the plaintiff was an unlicensed contractor and, thus, that an agreement entered into was an "absolute nullity."[102] Although not entirely clear, the court seems to have accepted plaintiff's argument that "dewatering" does not require a license but nevertheless dismissed plaintiff's claim after finding that plaintiff performed more than just dewatering work.[103]  Upon motion for reconsideration, the court reinstated plaintiff's breach of contract claim after finding that "the Contract as preformed [sic] was solely for water remediation/dewatering[,]" indicating that the court determined that a license was *not* required for dewatering or water remediation.[104]  As noted herein,

---

[101] *See* R. Doc. 38-1 at pp. 9–10; R. Doc. 42 at pp. 10–12.
[102] *See* No. 2:21-CV-03580, 2022 WL 90160, at *3 (W.D. La. Jan. 7, 2022).
[103] *Id.*
[104] *Id.* at *4.

neither the Agreement nor the Complaint in this case use the term "dewatering" to describe the services performed by Plaintiff, making it factually distinguishable. However, to the extent that the *RACM* court held that the types of services rendered here by Plaintiff are synonymous with dewatering and thus did not require a contractor's license to perform, the Court respectfully disagrees, for the reasons discussed above.

For the foregoing reasons, the Court determines that the plain meaning of "contractor" under La. R.S. 37:2150.1 compel the conclusion that Plaintiff acted under the Agreement as a contractor.  As such, Plaintiff was required to possess a valid contractor's license from the LSLBC to perform such work in the state of Louisiana. Because Plaintiff lacked said license, the Agreement entered into by the parties is in direct violation of state law and accordingly is an "absolute nullity" treated as though it never existed.  Without a valid contract, Plaintiff cannot adequately plead a breach of contract under Louisiana law.  Simply put, there was no contract between the parties capable of breach.  As such, the Court dismisses Plaintiff's claims for breach of contract with prejudice.

### C.    Breach of Covenant of Good Faith and Fair Dealing

To state a claim for the breach of the covenant of good faith and fair dealing under Louisiana law, a plaintiff must first allege a valid contractual relationship between the plaintiff and the defendant as good faith performance is considered an "implied requirement of every contract."[105]  For the same reasons as above, the Court

---

[105] *Grisaffi v. Dillard Dep't Stores, Inc.*, 43 F.3d 982, 983 (5th Cir. 1995) (citing La. C.C. art. 1983).

finds that Plaintiff has failed to allege that a valid contract existed between the Plaintiff and Defendant for the services rendered by Plaintiff. Accordingly, absent a valid contractual agreement, the Court finds that Plaintiff has failed to allege a breach of the covenant of good faith and fair dealing. The Court dismisses this claim with prejudice.

### D.    Open Account Claim Under La. R.S. 9:2781

Louisiana law defines an "open account" as "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions."[106] "When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant."[107]

Plaintiff's open account claim is premised on the services it rendered pursuant to the Agreement and Defendant's subsequent refusal to pay the amount specified in the final invoice.[108] That is, Plaintiff alleges that an open account was created by the services it performed under the Agreement and that the sending of the final invoice to Defendant constitutes "send[ing] written demand correctly setting forth the

---

[106] La. R.S. 9:2781(D).
[107] *Id.* § 2781(A).
[108] *See* R. Doc. 34 at ¶ 49 ("[Plaintiff] presented [Defendant] with its final invoice for services on or about October 13, 2021, and the amount remains unpaid.").

amount owed."[109]  Per the Agreement, the final written invoice becomes a part of the Agreement.[110]  Thus, Plaintiff's open account claim as alleged necessarily depends upon the validity of the Agreement; if the Agreement is invalid then Defendant cannot owe money under the Agreement.[111]  Because the Court, for the above reasons, has determined that the Agreement is an "absolute nullity" void *ab initio*, it follows that Plaintiff cannot state a claim for an open account regarding payment due under the Agreement.  The Agreement is deemed never to have existed.  Moreover, a party can only prevail on an open account claim where "judgment on the claim is rendered in favor of the claimant."[112]  As the "claim" here pertains to the now-dismissed claim for funds owed under the Agreement, the open account claim fails because judgment was *not* rendered in Plaintiff's favor.  Accordingly, the Court dismisses Plaintiff's open account claim.

### E.    Quantum Meruit & Unjust Enrichment

Plaintiff brings separate claims for both quantum meruit and unjust enrichment.  The Louisiana Supreme Court has explained that Louisiana courts have given two differing meanings to the term quantum meruit.[113]  The first meaning is as a descriptive term for an equitable principle of contract interpretation where a court determines that a contract is "ambiguous only with regard to compensation or price

---

[109] La. R.S. 9:2781(A).

[110] *See* R. Doc. 1-2.

[111] This is not to say that Plaintiff does not have other potential non-contractual remedies such as a claim for unjust enrichment, as discussed *infra*.  But such remedies exist without regard to and in spite of the Agreement.

[112] La. R.S. 9:2781(A).

[113] *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So. 2d 569, 574–75 (La. 1989).

for agreed upon services."[114]   In this instance, quantum meruit is the court's determination of the "reasonable value of services or equitable ascertainment of compensation or price[,]" and "simply a measure of compensation or price unstated in a contract."[115]   Accordingly, quantum meruit as it is used in this context sounds in contract.   Conversely, quantum meruit is sometimes used to describe a substantive non-contractual legal claim "geared to equity and unjust enrichment, something of a counterpart to the civilian *actio de in rem verso*."[116]   *Actio de in rem verso* is an independent remedy at law that does not require the existence of a contract; indeed, such a remedy would be inapplicable were there to exist a valid contract.[117]   However, this latter use of the term quantum meruit is disfavored under Louisiana law.[118]   As the Fifth Circuit has explained, "quantum meruit as a substantive basis of recovery . . . is not recognized as such in Louisiana but is only used as a measure of compensation or price in quasi-contract or when none is stated in a contract."[119]   Accordingly, "where a plaintiff seeks to employ a quantum meruit theory as a substantive ground for recovery . . . the analysis is more properly made under the doctrine of *actio de in rem verso* or unjust enrichment."[120]

Here, Plaintiff's quantum meruit claim is plead as a substantive non-contractual ground for recovery.   Indeed, Plaintiff alleges that "[r]ecovery under the

---

[114] *Id.* at 574.

[115] *Id.*

[116] *Id.*

[117] *Id.* at 575.

[118] *Fogleman v. Cajun Bag & Supply Co.*, 638 So. 2d 706, 708 (La. App. 3 Cir. 6/15/94), *writ denied*, 94-1900 (La. 10/28/94), 644 So. 2d 375.

[119] *SMP Sales Management, Inc. v. Fleet Credit Corp.*, 960 F.2d 557, 560 (5th Cir. 1992).

[120] *Fogleman*, 638 So. 2d at 709.

doctrine of quantum meruit is not contingent on a contract or agreement between the parties."[121]  Because Louisiana law does not recognize such an action under the title of quantum meruit, the Court finds it appropriate to consider the remedy sought by Plaintiff in conjunction with Plaintiff's claim for unjust enrichment.  The Court appropriately collapses these two claims into one single claim for unjust enrichment.

There are five prerequisites necessary to support an action for unjust enrichment: "(1) there must be an enrichment, (2) there must be an impoverishment, (3) there must be a causal relationship between the enrichment and the impoverishment, (4) there must be an absence of justification or cause for the enrichment or impoverishment, and (5) there must be no other remedy at law."[122]  To prevent unjust enrichment in the context of an absolutely null contract, La. C.C. art. 2033 provides that the "parties must be restored to the situation that existed before the contract was made."[123]  The recovery for unlicensed contractors in an action for unjust enrichment is limited to "the actual costs of their materials, services, and labor . . . with no allowance for profit or overhead."[124]  However, "a performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null."[125]  Because unjust enrichment is an equitable doctrine, the Court will not reward a party with unclean hands, as expressed in the

---

[121] R. Doc. 34 at ¶ 59.
[122] *Kirkpatrick v. Young*, 456 So. 2d 622, 624 (La. 1984) (citing *Minyard v. Curtis Products, Inc.*, 251 La. 624 (1967)).
[123] La. C.C. art. 2033.
[124] *Quaternary*, 316 So. 3d at 463 (citing *Boxwell v. Dep't of Highways*, 203 La. 760, 774 (1943)).
[125] La. C.C. art. 2033.

Roman maxim, *nemo propriam turpitudinem allegare potest* (no one may invoke his own turpitude).[126]

Defendant argues that Plaintiff should not be allowed to recover for unjust enrichment because Plaintiff either knew or should have known that the Agreement entered into between the parties was absolutely null because Plaintiff did not possess a required contractor's license.[127]  To survive a motion to dismiss, Plaintiff must allege facts, taken as true, to state a claim plausibly entitling it to relief.  Plaintiff has done so here.  Plaintiff has adequately plead that they enriched the Defendant by performing services at Defendant's property, that Plaintiff was subsequently impoverished due to Defendant's refusal to pay Plaintiff for the services rendered, that there is a causal connection between the enrichment and the impoverishment, and that no other remedy exists at law.  As to Defendant's argument that Plaintiff is disentitled to unjust enrichment because Plaintiff either knew or should have known of the defect causing the nullification of the Agreement, the Court finds that this is a factual dispute not appropriate for consideration on a motion to dismiss.  At this stage, the Court must take all well-plead allegations as true and construe all inferences in favor of the Plaintiff.[128]  Looking solely at the face of the Complaint, the Court finds that Plaintiff has sufficiently stated a claim.  Accordingly, Defendant's motion to dismiss Plaintiff's unjust enrichment claim is denied.

---

[126] *Id.* (1984 Revision Comments (c)).

[127] R. Doc. 38-1 at p. 14.

[128] *See Midwest Feeders, Inc.*, 886 F.3d at 513.

### F.      Enforcement of Lien under the PWA

The Louisiana Private Works Act grants "contractors" a lien on immovable property to secure an obligation "arising out a work on the immovable" for the price of their work.[129]  "Given the special nature of the rights provided by the PWA, its provisions must be strictly construed."[130]  Under the PWA, a "contractor is one who contracts with an owner to perform all or a part of a work."[131]  Accordingly, absent a valid contractual relationship, no claim may lie for the enforcement of a lien under the PWA.[132]  Because the Agreement between the parties is an "absolute nullity" void *ab initio*, the Court dismisses Plaintiff's claim under the PWA.

### G.      Defamation

Plaintiff has filed a motion to voluntarily withdraw its defamation claim with prejudice.[133]  The Court finds it proper to grant the unopposed Motion.  Accordingly, the Court denies as moot Defendant's Motion to Dismiss insofar as it pertains to Plaintiff's defamation claim.

### IV.     CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Under Fed.

---

[129] La. R.S. 9:4801(1).

[130] *Ilgen Constr., LLC v. Raw Materials, LLC*, 2020-0862, 2021 WL 1438726, at *6 (La. App. 1 Cir. 4/16/21) (citing *Landco Construction, LLC v. Precision Construction & Maintenance, LLC*, 19-0403 (La. App. 1 Cir. 11/15/19), 290 So. 3d 1185, 1191, *writ denied*, 19-01977 (La. 2/10/20), 292 So. 3d 67).

[131] La. R.S. 9:4807(A).

[132] *See Leija v. Gathright*, 51,049 (La. App. 2 Cir. 12/21/16), 211 So. 3d 592, 597 ("[Plaintiff]'s inability to establish a valid contractual obligation—the principal obligation—precludes the claim of a valid lien and privilege—the accessory right."), *writ denied*, 2017-0144 (La. 3/13/17), 216 So. 3d 806; *Ilgen*, 2021 WL 1438726, at *6 ("Therefore, in the absence of a valid and enforceable contract, a contractor or subcontractor cannot assert a valid lien under the PWA.").

[133] R. Doc. 130.

R. Civ. P. 12(b)(6)[134] is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** as to Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, open account under LA. R.S. 9:2781, and enforcement of lien under the PWA.  It is **DENIED** as to Plaintiff's claims of quantum meruit and unjust enrichment.

IT IS FURTHER ORDERED that Plaintiff's Unopposed Motion to Withdraw Certain Claims Asserted by CCAPS, LLC d/b/a ServiceMaster Elite[135] is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's breach of contract, breach of the covenant of good faith and fair dealing, open account under LA. R.S. 9:2781, enforcement of lien under the PWA, and defamation claims are **DISMISSED with prejudice**.  Plaintiff's claims for quantum meruit and unjust enrichment shall remain.

New Orleans, Louisiana, February 13, 2023.

**WENDY B. VITTER**
**United States District Judge**

---

[134] R. Doc. 38.
[135] R. Doc. 130.